# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA MONTGOMERY,<br><br>                     Plaintiff,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>                     Defendant. | CASE NO. 09-CV-1588 JLS (WVG)<br><br>**ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**<br>**(2) DIRECTING DEFENDANT TO FILE RENEWED MOTION FOR SUMMARY JUDGMENT;**<br>**(3) VACATING PRETRIAL CONFERENCE**<br><br>(Doc. No. 16) |

      Presently before the Court is Defendant's motion for summary judgment. (Doc. No. 16.) Also before the Court are Plaintiff's opposition and Defendant's reply. (Doc. Nos. 22 (Opp'n), 24 (Reply).) Having reviewed the parties' arguments and the law, the Court **GRANTS** Defendant's motion.

## BACKGROUND

      This Federal Tort Claims Act action arises out of a slip and fall accident that occurred while Plaintiff was employed as a contract nurse at Naval Medical Center San Diego (NMCSD). (Doc. No. 1 (Compl.) ¶¶ 1–2.) The following facts are not in dispute: In February 2008, Plaintiff was an experienced circulating nurse[1] with eight years of experience. (Doc. Nos. 16-2 to -3 (Exs. ISO MSJ)

---

[1] A circulating nurse is the only person present during a surgical procedure who does not "scrub in," that is, who does not wear a sterile gown, gloves, mask, and cap. (Doc. Nos. 16-2 to -3 (Exs. ISO MSJ) Ex. B (Pl.'s Dep.), at MSJ_0022 to _0024.) The circulating nurse reviews the patient's consent form with her, positions the patient in the operating room, hands items onto the

Ex. B (Pl.'s Dep.), at MSJ_0021 to _0029.) At the time, she was an employee of TCMP (*id.* at MSJ_0029), which contracted with the U.S. Navy to provide healthcare workers to NMCSD (Ex. A ISO MSJ (Budge Decl.) ¶ 5). On February 8, 2008, while circulating for a vascular surgery in NMCSD operating room 11, Plaintiff slipped on a puddle of saline and fell. (Pl.'s Dep. MSJ_0047, MSJ_0049 to _0053, MSJ_0055 to _0057, MSJ_0059 to _0061, MSJ_0070.) As a result of her fall, Plaintiff sustained a broken toe. (*Id.* at MSJ_0067 to _0068.) As a result of her injury, she received workers' compensation benefits. (Pl.'s Dep. MSJ_0066 to _0077, MSJ_0071.)

On July 22, 2009, Plaintiff filed a complaint for negligence against Defendant. (Compl.) The complaint alleges that Defendant, as owner and operator of NMCSD, failed to maintain the floor of the operating room in a reasonably safe condition, and as a result, Plaintiff slipped and fell. (*Id.* ¶¶ 19, 22.) On October 4, 2010, Defendant filed the instant motion for summary judgment. (Doc. No. 16.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

---

sterile field, and updates the patient's chart. (*Id.* at MSJ_0023, MSJ_0040.) In essence, the circulating nurse is "the watch dog of the [operating] room." (*Id.* at MSJ_0023.)

1    Once the moving party establishes the absence of genuine issues of material fact, the burden
2 shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.
3 *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported summary
4 judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S.
5 at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from
6 the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*
7 *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

8    Federal Rule of Civil Procedure 56(d) provides for partial summary judgment.  See Fed. R.
9 Civ. P. 56(d)(1) ("If summary judgment is not rendered on the whole action, the court should, to the
10 extent practicable, determine what material facts are not genuinely in issue. . . . It should then issue
11 an order specifying what facts . . . are not genuinely at issue.  The facts so specified must be treated
12 as established in the action.").  Under Federal Rule of Civil Procedure 56(d), a court may grant
13 summary judgment on less than the non-moving party's entire claim. *Zapata Hermanos Sucesores,*
14 *S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.).  "The partial summary
15 judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial
16 of the case.  This adjudication . . . serves the purpose of speeding up litigation by eliminating before
17 trial matters wherein there is no genuine issue of fact." Fed. R. Civ. P. 56 advisory committee's note.

18                              **DISCUSSION**

19 **1.    Defendant's Motion for Summary Judgment**

20    Defendant moves for summary judgment on three grounds.  First, Defendant contends that it
21 cannot be liable under the concealed hazardous condition doctrine because the saline was not
22 concealed, Plaintiff was reasonably expected to know of the condition, and hazard prevention was part
23 of the work Plaintiff was hired to perform.  (Doc. No. 16-1 (Mem. ISO MSJ), at 9–13.)  Second,
24 Defendant contends that it cannot be liable under the negligent exercise of retained control doctrine
25 because Defendant had turned control of the operating room over to Plaintiff.  (*Id.* at 13–14.)  Third,
26 Defendant contends that it cannot be liable under the peculiar risk doctrine Plaintiff has received
27 workers' compensation benefits. (*Id.* at 14–15.)  The Court first addresses whether Plaintiff may hold
28

Defendant liable under the peculiar risk doctrine.[2]

### A.  *Peculiar Risk*

"At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work." *Privette v. Superior Court*, 854 P.2d 721, 724 (Cal. 1993). Modernly, courts have carved out numerous exceptions to the common law rule, including the peculiar risk doctrine. *Id.* Under the doctrine, "when the hirer fails to ensure by contract or other means that special precautions will be taken, the hirer may be *directly* liable for injuries arising from . . . inherently dangerous work." *Sheeler v. Greystone Homes, Inc.*, 6 Cal. Rptr. 3d 683, 687 (Cal. Ct. App. 2003) (citing RESTATEMENT (SECOND) OF TORTS § 413 (1965)) (emphasis in original); *accord Privette*, 854 P.2d at 723 ("Under the peculiar risk doctrine, a person who hires an independent contractor to perform work that is inherently dangerous can be held liable for tort damages when the contractor's negligent performance of the work causes injuries to others."). Before 1995, California law allowed an independent contractor's *employee* to recover tort damages under the peculiar risk doctrine from the person who hired the contractor. *See Privette*, 854 P.2d at 726, 729; *Browne v. Turner Constr. Co.*, 26 Cal. Rptr. 3d 433, 437 (Cal. Ct. App. 2005) ("Prior to these cases it was widely held that the hirer could be liable to [an independent contractor's employees] for breach of a duty, often referred to as 'nondelegable,' to protect workers from harm arising from a 'peculiar risk' inherent in the work.").

In *Privette*, however, the California Supreme Court held that an independent contractor's "employees may not recover under [the peculiar risk] doctrine for injuries subject to [workers'] compensation coverage." *Sheeler*, 6 Cal. Rptr. 3d at 687–88 (citing *Privette*, 854 P.2d at 726–31;

---

[2] Defendant also argues that "Plaintiff could be viewed as the independent contractor rather than an employee of the contractor." (Mem. ISO MSJ 9.) The Court finds this argument unpersuasive. Even though the Court agrees that "the relationship between the hirer, (the Navy), the independent contractor, (TCMP), and the contractor's employee, (Plaintiff), differed markedly from the traditional model" (*id.*), Defendant offers no authority that would permit the Court to ignore the undisputed fact that TCMP—rather than the U.S. Navy—employed Plaintiff (Pl.'s Dep. MSJ_0029). Further, the Court questions whether the Navy's relationship with Plaintiff was consistent with that between an independent contractor and a hirer. *See Tverberg v. Fillner Constr., Inc.*, 232 P.3d 656, 661 (Cal. 2010) ("When an independent contractor is hired to perform inherently dangerous . . . work, that contractor, unlike a mere employee, *receives authority to determine how the work is to be performed* and assumes a corresponding responsibility to see that the work is performed safely.") (emphasis added).

1 *accord Toland v. Sunland Housing Group, Inc.*, 955 P.2d 504, 515 (Cal. 1998) (holding that *Privette* bars all actions against a an independent contractor's employee against the hirer under the peculiar risk doctrine, provided that employee's injuries are subject to workers' compensation coverage). The justification for this limitation is straightforward. Under California's workers' compensation scheme, an independent contractor's employee may not recover in tort against the contractor for injuries subject to workers' compensation coverage. *See* Cal. Lab. Code § 3602(a); *Privette*, 854 P.2d at 726–27. Viewed expansively, the peculiar risk doctrine "produces the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury." *Id.* at 728. And "in the case of on-the-job injury to an employee of the independent contractor, the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk . . . ." *Id.* at 730. Hence, *Privette*'s limitation of the peculiar risk doctrine.

As an initial matter, Plaintiff contends that *Privette* and its progeny do not apply to her negligence claim "because there is no allegation of negligence against the contractor." (Opp'n 15.) California law forecloses this argument. In *Sheeler*, the plaintiffs argued that their negligence claims fell "outside the limitations on hirer liability in *Privette* and its progeny" because, unlike the situations in *Privette* and the California Supreme Court's cases following *Privette*, "Sheeler's injuries [were] not traceable to negligence by his own employer." 6 Cal. Rptr. 3d at 692. Relying on *Smith v. AcandS, Inc.*, 37 Cal. Rptr. 2d 457 (Cal. Ct. App. 1994), *disapproved on other grounds by Camargo v.Tjaarda Dairy*, 25 P.3d 1096, 1102 (Cal. 2001), the California Court of Appeal rejected the plaintiffs' argument and held that "the *Privette* rationale governed, notwithstanding the absence of negligence" by Sheeler's own employer. *Sheeler*, 6 Cal. Rptr. 3d at 692. Accordingly, the Court rejects Plaintiff's contention that her negligence claim falls entirely outside of *Privette* and its progeny.

Plaintiff also argues that Defendant cannot rely on the *Privette* doctrine because Defendant did not assert the affirmative defense of workers' compensation exclusivity in its answer. (Opp'n 15; *see generally Unigard Ins. Group v. O'Flaherty & Belgum*, 45 Cal. Rptr. 2d 565, 570 (Cal. Ct. App. 1995) ("A defendant claiming that the Workers' Compensation Act protects him from an action at law bears the burden of pleading and proving that the Act bars the employee's remedy.").) This argument lacks

merit. Contrary to Plaintiff's assertion, Defendant is *not* arguing that Plaintiff's negligence claim is barred due to workers' compensation exclusivity.[3] Although the California Supreme Court in *Privette* partly relied on the Workers' Compensation Act's exclusivity provision in crafting its rule, *see* 854 P.2d at 726–30, it announced a doctrine distinct from the rule of workers' compensation exclusivity, *see id.* at 730. Defendant relies on this separate doctrine in support of its argument that Plaintiff may not recover on a peculiar risk theory because she received workers' compensation benefits. (*See* Reply 3.) Plaintiff has cited no authority *requiring* Defendant to plead the *Privette* doctrine as an affirmative defense, and the Court is aware of none. *Cf. Madden v. Summit View, Inc.*, 81 Cal. Rptr. 3d 601, 603 (Cal. Ct. App. 2008) (noting that the defendant's answer "included an affirmative defense based on *Privette* and *Toland*). Thus, Defendant's failure to plead the *Privette* doctrine as an affirmative defense does not preclude it from asserting the doctrine here.

Accordingly, the Court applies *Privette*. Plaintiff does not dispute that, as a result of her injury, she received workers' compensation benefits consisting of payments for lost wages and medical care. (Pl.'s Dep. MSJ_0066 to _0077, MSJ_0071.) Plaintiff only was out of pocket for expenses related to travel to and from the workers' compensation physician. (*Id.* at MSJ_0071.) "Thus, the doctrine of peculiar risk affords [Plaintiff] no basis for seeking damages from [Defendant] for the same injuries compensable under the workers' compensation scheme." *Privette*, 854 P.2d at 730.

### B.    *Negligent Exercise of Retained Control*

Another exception to the common law rule of nonliability for an independent contractor's hirer is the negligent exercise of retained control doctrine. *See generally Hooker v. Dep't of Transp.*, 38 P.3d 1081 (Cal. 2002); RESTATEMENT (SECOND) OF TORTS § 414 (1965). Under the doctrine, an employee of an independent contractor may recover tort damages from a hirer that retained control over safety conditions at a worksite if "the hirer *exercised* the control that was retained in a manner

---

[3] Nor would the Workers' Compensation Act's exclusivity provision, by its terms, bar Plaintiff's claim against Defendant. Workers' compensation exclusivity runs only against the employer and other employees of the employer; it does not run against the hirer of an independent contractor. *See* Cal. Labor Code § 3602(a) ("Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee or his or her dependents *against the employer* . . . ."); *id.* § 3601(a) (regarding the right to recover compensation from other employees of the employer).

that *affirmatively* contributed to the injury of the contractor's employee." *Id.* at 1089 (emphasis in original). "'Affirmative contribution' occurs where [the hirer] 'is actively involved in, or asserts control over, the manner of performance of the contracted work.'" *Millard v. Biosources, Inc.*, 68 Cal. Rptr. 3d 177, 184 (Cal. Ct. App. 2007) (quoting *Hooker*, 38 P.3d at 1092). "Such an assertion of control occurs, for example, when the principal employer *directs* that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished." *Hooker*, 38 P.3d at 1092 (quoting *Thompson v. Jess*, 979 P.2d 322, 327 (Utah 1999)) (internal quotation marks omitted) (emphasis in original).

Turning to Plaintiff's claim, the first question under *Hooker* is whether Defendant retained control over safety conditions at NMCSD. Defendant contends that it ceded control over safety conditions in NMCSD operating room 11 to Plaintiff. (Mem. ISO MSJ 13–14.) Defendant notes that the U.S. Navy's contract with TCMP required Plaintiff to "[m]aintain a clean, safe environment for the patient either by active participation in the cleaning of medical spaces and medical equipment, or by guiding and directing other personnel in the environmental maintenance." (Budge Decl. Attach. 1, at MSJ_0014.) Further, Plaintiff was charged with "[e]nforcement of all safety and security policies for the protection of patients and staff." (Pl.'s Dep. Ex. 1, at MSJ_0080.) However, Plaintiff points out that NMCSD had a separate safety command structure that did not include Plaintiff. (*See* Opp'n 13; Doc. Nos. 22-1 to -4 (Exs. ISO Opp'n) Ex. A, at OPP_003 ("The Department Head is responsible for the safety and safety training of the staff and patients. A Safety/Hazardous Materials Officer and a Safety Petty Officer will be appointed.").) Thus, a factual dispute exists regarding whether Defendant retained control over safety conditions at NMCSD.

However, even assuming that Defendant retained control over safety conditions at NMCSD, Defendant did not "*exercise*[] the control that was retained in a manner that *affirmatively* contributed to" Plaintiff's injury. *Hooker*, 38 P.3d at 1089. Plaintiff argues that Defendant affirmatively contributed to her injury "because it cannot be disputed that Defendant's employee, [Petty] Officer Foster, created the hazard that caused [Plaintiff] to break two bones." (Opp'n 14.) However, in each California case analyzing a hirer's liability under *Hooker*, the plaintiff claimed that his or her injury resulted from the hirer's exercise of the specific control it retained. *See, e.g.*, *Hooker*, 38 P.3d at

1  865–66 (exercise of power to permit vehicles to use overpass while crane was being operated); *McKown v. Wal-Mart Stores*, 38 P.3d 1094, 1097 (Cal. 2002) (exercise of power to provide equipment); *Padilla v. Pomona Coll.*, 82 Cal. Rptr. 3d 869, 881–82 (Cal. Ct. App. 2008) (exercise of ability to physically turn off PVC pipe); *Browne*, 26 Cal. Rptr. 3d at 441–42 (exercise of power to remove safety systems and devices); *Sheeler*, 6 Cal. Rptr. 3d at 693–94 (exercise of power to schedule cleanups of construction site); *Ray v. Silverado Constructors*, 120 Cal. Rptr. 251, 261–62 (Cal. Ct. App. 2002) (exercise of power to close roadway during construction).  In contrast, Plaintiff does not suggest that saline ended up on operating room 11's floor as a result of Defendant's exercise of retained control over *safety conditions* at NMCSD.  Put another way, Petty Officer Foster was not acting incident to any responsibility for the safety of hospital staff and patients that Defendant may have retained when he caused saline to be on operating room 11's floor.

Accordingly, Plaintiff fails to raise triable issues of material fact as to whether Defendant actually exercised any control it may have retained so as to affirmatively contribute to Plaintiff's injury.  Accordingly, the Court finds that Plaintiff may not recover under the negligent exercise of retained control doctrine.

### C.  *Concealed Hazardous Condition*

Under *Kinsman v. Unocal Corp.*, 123 P.3d 931, 940 (Cal. 2005), a hirer as the landowner may be liable to an independent contractor's employee, "even if it does not retain control over the work, if (1) it knows or reasonably should know of a concealed, pre-existing hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor."  The justification for this exception to the common law rule of nonliability for an independent contractor's employee is straightforward.  "[W]here the hazard is concealed from the contractor, but known to the landowner, the landowner cannot effectively delegate to the contractor responsibility for the safety of its employees if it has not communicated crucial information to the contractor."  *Padilla*, 82 Cal. Rptr. 3d at 881–82.

*(1)  Whether the Saline Was Concealed*

Defendant first argues that the saline puddle in operating room 11 was not a concealed hazardous condition because it was "exposed and in an open walkway." (Opp'n 10.) This argument

1 lacks merit. As a matter of common sense, the Court doubts that a puddle of clear saline was
2 "unconcealed," as Defendant contends. Plaintiff's testimony that she did not see the saline before she
3 slipped on it supports this conclusion (Pl.'s Dep. MSJ_0062 to _0063), as does the testimony of Nancy
4 Howell, who was present in the room when Plaintiff fell (Ex. D ISO Opp'n (Howell Dep.)
5 OPP_0056). Accordingly, a triable issue of material fact remains as to whether the saline was
6 concealed.

*(2)     Whether Plaintiff Was Reasonably Expected to Know of the Hazard*

Defendant next argues that Plaintiff cannot recover under the concealed hazardous condition doctrine because she "knew that saline spills were a hazard that may be found in [operating room] 11." (Mem. ISO MSJ 12.) The Court disagrees. Although Plaintiff testified in her deposition that fluids—including blood and saline—can end up on the operating room floor *during surgeries* (Pl.'s Dep. MSJ_0069), it is undisputed that Plaintiff's fall occurred before the surgery for which she was circulating started (*id.* at MSJ_0060 to _0061). And although Plaintiff received training regarding hazards associated with blood, bodily fluids, and other fluids, this training apparently focused on the danger of bloodborne pathogens. (*See* Ex. E ISO Opp'n (Pl.'s Dep.), at OPP_0069 to _0072.) Accordingly, a reasonable jury could conclude that Plaintiff reasonably would not have expected to encounter a saline spill on the operating room floor before a surgery.

*(3)     Whether Plaintiff Was Hired to Perform Hazard Prevention*

Finally, Defendant argues that Plaintiff cannot recover under the concealed hazardous condition doctrine because "Plaintiff's duties included inspecting and monitoring for spills." (Opp'n 13; *see Kinsman*, 123 P.3d at 942 ("[T]he principles enunciated in *Privette* suggest that the landowner would not be liable when the contractor has failed to engage in inspections of the premises implicitly or explicitly delegated to it."); 1 JUDICIAL COUNCIL OF CALIFORNIA, CIVIL JURY INSTRUCTIONS No. 1009A (2010) [hereinafter CACI No. 1009A] (stating that a plaintiff must prove, as an element for a claim under concealed hazardous condition doctrine, "[t]hat the condition was not part of the work that [name of plaintiff's employer] was hired to perform").)

The Court agrees with Defendant. As a staff perioperative nurse, Plaintiff was "responsible for a safe environment for staff and patients." (Pl.'s Dep. Ex. 1, at MSJ_0077; *see also id.* at

MSJ_0080 to _0081.) And Defendant's Federal Rule of Civil Procedure 30(b)(6) representative testified that "someone in [Plaintiff's] position is expected to be cleaning up the floor all the time . . . . The nurse's responsibility in the room as the circulating nurse [is] to be monitoring the floors, and she's continually trying to keep the hazards to a minimum." (Ex. C ISO MSJ (Colletta Dep.), at MSJ_0101.) Thus, it appears that the condition that caused Plaintiff's injury "was . . . part of the work that" Plaintiff was hired to perform. CACI No. 1009A.

Plaintiff argues that, even if *she* was responsible for cleaning up spill, she may still recover under the concealed hazardous condition doctrine because "*TCMP* was not hired to perform janitorial services." (Opp'n 12–13 (emphasis added).) However, the U.S. Navy did hire TCMP to provide operating room nurses, and the Navy's contract with TCMP required operating room nurses to "[m]aintain a clean, safe environment for the patient either by active participation in the cleaning of clinical spaces and medical equipment, or by guiding and directing other personnel in the environmental maintenance." (Budge Decl. Attach. 1, at MSJ_0014.) Thus, it appears that the condition that caused Plaintiff's injury was also "part of the work that" TCMP was hired to perform. CACI No. 1009A

Accordingly, Plaintiff has failed to raise triable issues of material fact as to whether Defendant hired Plaintiff and TCMP to perform hazard prevention. Accordingly, the Court finds that Plaintiff may not recover under the concealed hazardous condition doctrine.

**2.     Whether the Court's Ruling Concludes this Action**

Plaintiff also obliquely contends that she may recover against Defendant under general negligence principles, an issue not addressed in Defendant's motion. (*See* Opp'n 15 ("There have been no allegations of negligence on the part of TCMP. [Plaintiff] suffered injury because of the action taken by an employee of Defendant . . . .").) At least one California authority supports this position. *See Browne*, 26 Cal. Rptr. 3d at 442 ("Where the hirer breaches a duty arising under general tort principles, nothing in [the *Privette* line of] cases suggests that it may not be liable."). And at oral argument, counsel for Defendant as much as conceded that Plaintiff's cause of action *might* survive even if the Court granted Defendant's motion in its entirety. Given the parties' lack of clarity on this issue, the Court declines to resolve it without further briefing.

Accordingly, Defendant **SHALL FILE** a motion for summary judgment with respect to this issue <u>within 45 days of the date this Order is electronically docketed</u>.

## CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's motion for summary judgment in its entirety. Defendant **SHALL FILE** a renewed motion for summary judgment regarding its liability under general negligence principles by <u>within 45 days of the date this Order is electronically docketed</u>. The pretrial conference, presently set for <u>April 21, 2011</u>, is **HEREBY VACATED** pending resolution of Defendant's renewed motion.

**IT IS SO ORDERED.**

DATED: February 22, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge