# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA MONTGOMERY,<br><br>                            Plaintiff,<br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>                            Defendant. | CASE NO. 09-CV-1588 JLS (WVG)<br><br>**ORDER: (1) DENYING TWIN CITIES' MOTION TO INTERVENE; (2) DENYING TWIN CITIES' MOTION TO STAY; AND (3) GRANTING PARTIES' JOINT MOTION TO DISMISS**<br><br>(ECF Nos. 40, 41, 44) |

Presently before the Court are motions by Twin Cities Fire Insurance Company ("Twin Cities") to intervene in this action and to stay dismissal of the action until the motion to intervene can be heard. (ECF Nos. 40, 41.) Also before the Court is a joint motion by Plaintiff Carla Montgomery and Defendant United States of America to dismiss the action with prejudice. (ECF No. 44.) Having considered the parties' arguments and the law, the Court **DENIES** Twin Cities' motion to intervene, **DENIES** its motion to stay, and **GRANTS** the parties' joint motion to dismiss.

## BACKGROUND

This underlying Federal Tort Claims Act ("FTCA") action arises out of a slip and fall accident that occurred while Plaintiff was employed as a contract nurse at Naval Medical Center San Diego (NMCSD).[1] In February 2008, Plaintiff was working as a circulating nurse, employed

---

[1] The facts in this background section are taken in large part from the Court's February 22, 2011 Order. (ECF No. 30.)

by TCMP Health Services, LLC. On February 8, 2008, while circulating during a vascular surgery in NMCSD operating room 11, Plaintiff slipped on a puddle of saline and fell, breaking her toe. As a result of her injury, she received workers' compensation benefits.

On July 22, 2009, Plaintiff filed a complaint for negligence against Defendant. (Compl., ECF No. 1.) The complaint alleges that Defendant, as owner and operator of NMCSD, failed to maintain the floor of the operating room in a reasonably safe condition, and that as a result Plaintiff slipped and fell. On February 22, 2011, the Court granted Defendant's motion for summary judgment, and directed Defendant to file a renewed motion for summary judgment regarding its liability under general negligence principles. (Order, ECF No. 30.) Defendant declined to file a renewed motion. (ECF No. 31.) On May 26, 2011, the date set for pretrial conference in this matter, Twin Cities[2] filed a notice of lien. (Notice of Lien, ECF No. 36.) This notice claimed "first lien upon the settlement, proceeds of any judgment or the satisfaction of any judgment herein" in favor of Plaintiff Montgomery for amounts paid in workers' compensation and related benefits totaling $30,880.37, pursuant to California Labor Code § 3852 ("California Worker's Compensation Act" or "CWCA").

Before the date set for pretrial conference, counsel for Defendant United States of America informed the Court that the parties had reached a tentative settlement and intended to file a joint motion to dismiss. (*See* Notice of Hearing on Sua Sponte Dismissal, ECF No. 38.) However, no motion to dismiss was filed and neither party appeared at the pretrial conference. On May 27, 2011, the Court notified the parties that this case would be dismissed on June 30, 2011 pursuant to the Court's inherent authority to dismiss an action *sua sponte* for want of prosecution. (*Id.*)

---

[2] Twin Cities states it is the worker's compensation carrier for Plaintiff's employer. However, in her opposition to Twin Cities' motion to intervene, Plaintiff counters that "The Hartford is the workers compensation carrier for [Plaintiff's] employer TCMP. . . . Plaintiff suspects Twin Cities bought the subrogation claim from The Hartford, but no clear explanation as to what Twin Cities' relationship is to the case has been disclosed to plaintiff." (Pl.'s Opp'n to Mot. to Intervene 2, ECF No. 45.) Plaintiff provides documentation of correspondence between herself and The Hartford regarding her worker's compensation claim. (*See, e.g.* Pl.'s Opp'n Ex. 3, ECF No. 45-2.) From the evidence presently before it, the Court cannot discern the relationship between these two insurance carriers. However, for the purposes of this motion, the entities appear to be the same. (*See, e.g.*, Gubersky Decl. ISO Reply ¶ 5 (referencing "Twin Cities (The Hartford)" and citing to emails that refer to the two entities interchangeably.)) Thus, the Court will proceed under the assumption that Twin Cities, also known as The Hartford, is the proper worker's compensation carrier in this matter.

However, on June 17, 2011, Twin Cities filed the instant motion to intervene in this action pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B). (Mot. to Intervene, ECF No. 41.) Twin Cities simultaneously filed a motion to stay the Court's dismissal of the action until its motion to intervene could be heard. (Mot. to Stay, ECF No. 40.) Subsequently, the Court vacated the hearing on the *sua sponte* dismissal set for June 30, 2011 pending the resolution of Twin Cities' motions. (Order Vacating Hearing, ECF No. 42.) On July 14, 2011, while Twin Cities' motions were still pending, Plaintiff and Defendant filed a joint motion to dismiss the action with prejudice pursuant to a stipulated settlement between them. (Joint Motion to Dismiss, ECF No. 44.) Both parties also filed oppositions to Twin Cities' motion to intervene, (Pl.'s Opp'n to Mot. to Intervene, ECF No. 45; Def.'s Opp'n to Mot. to Intervene, ECF No. 43) and Twin Cities replied (Reply ISO Mot. to Intervene, ECF No. 46.) Twin Cities' motions were set for hearing on August 25, 2011, and the Court vacated the hearing and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 47.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 24(a) provides in relevant part:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit has established a four-part test to determine whether intervention as of right is appropriate: "(1) the motion must be timely; (2) the applicant must assert a 'significantly protectable' interest relating to property or a transaction that is the subject matter of litigation; (3) the applicant must be situated so that disposition of action may as a practical matter impair or impede the interest; and (4) the applicant's interest must be inadequately represented by the parties." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1107–08 (9th Cir. 2002) (citing *Wetlands Action Network v. U.S. Army Corps of Eng'rs,* 222 F.3d 1105, 1113–14 (9th Cir. 2000) and *Sierra Club v. E.P.A.,* 995 F.2d 1478, 1481 (9th Cir. 1993)). The requirements for intervention as of right are interpreted liberally in favor of intervention. *Prete v. Bradbury,* 438 F.3d 949, 954 (9th Cir. 2006). In determining whether intervention is appropriate, well-pleaded

1  nonconclusory allegations in the motion to intervene and the declarations in support of the motion
2  must be taken as true, and a court may take notice of uncontroverted facts in pleadings and
3  affidavits opposing intervention.  *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 819–20
4  (9th Cir. 2001).  This determination should be primarily guided by practical and equitable
5  considerations.  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

6  Further, Federal Rule of Civil Procedure 24(b)(1)(B) permits a court to allow anyone to
7  intervene on a timely motion who "has a claim or defense that shares with the main action a
8  common question of law or fact."  A party seeking permissive intervention must show that "(1) it
9  shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the
10 court has an independent basis for jurisdiction over the applicant's claims."  *Donnelly,* 159 F.3d at
11 412 (citing *Nw. Forest Res. Council,* 82 F.3d at 839).  While permissive intervention is left to the
12 broad discretion of the district court, the court "must consider whether intervention will unduly
13 delay the main action or will unfairly prejudice the existing parties."  *See Donnelly,* 159 F.3d at
14 412; Fed. R. Civ. P. 24(b)(2).

**ANALYSIS**

16 Twin Cities seeks to enter this action as a plaintiff-in-intervention in order to obtain
17 reimbursement of any workers' compensation amounts already paid to Plaintiff which are
18 attributable to negligence on the part of Defendant.  (Mot. to Intervene 3.)  According to Twin
19 Cities, it was never served formal notice of this action by Plaintiff as required by California Labor
20 Code § 3853.  Further, Twin Cities asserts that the CWCA allows an employer or insurance carrier
21 acting as employer to intervene in an employee's action against a third party to recover payments
22 it has made to the employee injured by the third party.  For these reasons, Twin Cities argues that
23 it may intervene in this action as of right, and that the interests of justice would not be served by
24 the Court's dismissal of the action, precluding Twin Cities from obtaining full recovery of the
25 benefits it has paid to Plaintiff.  In the alternative, Twin Cities states that its intervention is at least
26 permissible under Federal Rule of Civil Procedure 24(b)(1)(B).

27 Defendant objects to the intervention, stating that Twin Cities' interests are sufficiently
28 protected by the lien it asserted in this case on May 26, 2011 pursuant to California Labor Code

§ 3856(b). (Def.'s Opp'n to Mot. to Intervene 1; *see also* Notice of Lien, ECF No. 36.) Defendant states that it transferred funds to Plaintiff's counsel's trust account on July 13, 2011, as provided by the May 23 settlement between those two parties, and argues that "Twin Cities is entitled to recover from plaintiff's settlement, after reasonable attorney's fees are paid out, its expenses." (*Id.* at 2.) Further, Defendant asserts that Twin Cities has not established intervention serves the interests of justice because Twin Cities may file suit directly against Plaintiff to enforce its lien, and intervention at this time would prejudice both Defendant and Plaintiff, who have settled the present action and seek to dismiss it voluntarily with prejudice. (*Id.* at 3.)

Plaintiff also objects to the intervention, adding that Twin Cities' insistence on recovering 100% of its lien is improper, as its recovery should at least be reduced by the amount of Plaintiff's expenses under the equitable common fund doctrine, as outlined in California Labor Code § 3856. (Pl.'s Opp'n 3, 5.) Plaintiff states it has negotiated with Twin Cities to resolve the lien, offering as much as $17,105.35, but that all of its attempts were rejected. (*Id.* at 6.) According to Plaintiff's calculations, a 45% attorney fee should be applied for Plaintiff's counsel's efforts in recovering the lein, and after costs of $1,956 are also subtracted, Plaintiff's offer to pay $17,105.35 "represents a 50% recovery which is much more than customary." (*Id.*) Plaintiff emphasizes that Twin Cities "did nothing until 20 days after settlement was entered, and is now swooping down to prey on plaintiff's compensation for pain and suffering is patently unjust." (*Id.* at 7.)

Although Twin Cities admits it could file a separate suit to recover its payments, it argues this right is "illusory," because "[o]nce the plaintiff's counsel distributes the funds to plaintiff, the real opportunity for collection plummets to zero." (Reply ISO Mot. to Intervene 4, ECF No. 46.) While the Court agrees with Twin Cities that it has an interest in the matter, Twin Cities has not adequately shown that its request to intervene was timely or that absent intervention, Twin Cities will be unable to protect its interests. Because this analysis implicates some issues of underlying substantive law, the Court turns first to a brief discussion of the relevant law under the FTCA. Following this summary, the Court applies that law and the facts of this case to the factors relevant to Twin Cities' motion to intervene, discussing intervention as of right and permissive intervention in turn.

**1. Underlying Substantive Law**

Actions against the government grounded in tort brought under the FTCA often raise choice of law questions. Of course, actions brought in federal court under the FTCA are governed by federal law. *See Jackson v. United States*, 881 F.2d 707, 711-712 (9th Cir. 1988). However, the FTCA's own choice of law provisions specifically make state law controlling to the extent needed to determine the government's substantive liability. *See, e.g.*, 28 U.S.C. § 2674 (providing that the government is liable "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."); *Shaw v. United States*, 741 F.2d 1202, 1205 (9th Cir. 1984) ("The components and measure of damages in FTCA claims are taken from the state where the tort occurred. . . ."); *see also Jackson*, 881 F.2d at 712. Thus, in determining the underlying law to apply in deciding the instant motion, the Court looks to California law for issues of substantive liability. All other non-substantive issues are governed by federal law, as summarized below.

The California Worker's Compensation Act provides that either the employer (or the employer's insurance carrier, standing in the employer's shoes[3]), or the employee, or both may bring an action against a third party for damages proximately resulting from an injury qualifying under the statute. *See* Cal. Lab. Code §§ 3850 et seq. In general, when the employee elects to bring such an action alone, as here, the carrier may force a right of subrogation for amounts paid in worker's compensation   Cal. Lab. Code § 3852; *see also Fremont Comp. Ins. Co. v. Sierra Pine, Ltd.*, 121 Cal.App.4th 389, 397 (2004) (explaining that "the employer is subrogated to the employee's rights" in employee's action against a third-party tortfeasor for reimbursement of compensation benefits.) In such a case, the employee must provide notice of the suit to the carrier by serving it with a copy of the complaint. Cal. Lab. Code § 3853.

California courts interpreting the CWCA have made clear that a carrier seeking to recover payments it has made to an employee injured by a third party has three options. "It may: (1) intervene in an injured worker's action, (2) file an independent action, or (3) assert a lien in an

---

[3] Because the Act uses the term "employer" to refer also to the employer's insurer, for clarity the Court will use the term "carrier" here in describing the Act's provisions relating to employers. *See* Cal. Lab. Code § 3850(b).

injured worker's action." *Fremont Comp.*, 121 Cal.App.4th at 396 (citing Cal. Lab. Code §§ 3852, 3853, 3856; *Gapusan v. Jay*, 66 Cal.App.4th 734, 739 (1998)).[4]  Although these three statutory remedies are not necessarily mutually exclusive, the carrier will not be allowed double recovery. *Hughes v. Argonaut*, 88 Cal.App.4th at 527 (explaining that a carrier may "sue the third party directly and also apply for reimbursement from the employee's recovery against the third party. Satisfaction of the insurer's lien from the employee's judgment or settlement would simply diminish the insurer's claim against the third party."); *see also McKinnon v. Otis Elevator Co.*, 149 Cal. App.4th 1125, 1137 (2007).  The underlying policy rationale is to prevent double recovery, ensure the third party does not have to defend two lawsuits, and minimize compensation insurance rates. *Fremont Comp.*, 121 Cal.App.4th at 396.  The *Fremont* court further elaborated that "subrogation principles must be applied so as to further the legislative purpose . . . that the third party is liable for all the wrong his tortfeasance brought about; this includes both the damage to the employee and payments made or required to be made by the employer." *Id.* at 400.

The CWCA also protects the injured employee's rights.  In 1971, the CWCA provisions relating to settlements between injured employees and third party defendants were amended to substantially bolster the employee's rights in this regard. *See Assoc. Constr. & Eng'g Co. v. Workers' Comp. App. Bd.*, 587 P.2d 684, 688 (1978).  Most significantly, the employee may now proceed with his case against a third party and to settle his claims on his own without the carrier's consent or receipt of proper notice.  Section 3859 now reads: "Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the [carrier].  Such settlement or release shall be subject to the [carrier's] right to proceed to recover compensation he has paid . . . ."  Thus, the employee has the right to settle his claims without the carrier's involvement, but the carrier must

---

[4] The CWCA specifically provides that the carrier "may, at any time before trial on the facts, join as party plaintiff," Cal. Lab. Code § 3853, or may place and enforce a lien in the amount of compensation payments it has made against the employee or third party, Cal. Lab. Code § 3862. Further support for the carrier's ability to claim a lien against any judgment or settlement of an employee's claim against a third party is found in section 3865, which states that any judgment or settlement of such an action is "upon notice to the court, subject to the same lien claims [provided for in section 4900 et seq.] and shall be allowed by the court as it determines necessary to avoid a duplication of payment as compensation to the employee for lost earnings."

also be provided an opportunity to recover the amount of compensation he paid to the employee in some way. *See* Cal. Lab. Code § 3860(a).

Where an action between the employee and a third party is settled prior to entry of judgment, with or without notice to the carrier, section 3860 provides for the reimbursement of the carrier.[5] If the settlement was achieved due to efforts by the employee's attorney without participation by the carrier, this section dictates that "prior to the reimbursement of the [carrier] . . . there shall be deducted from the amount of the settlement the reasonable expenses incurred in effecting such settlement, including costs of suit, if any, together with a reasonable attorney's fee to be paid to the employee's attorney, for his services in securing and effecting settlement for the benefit of both the [carrier] and employee." Cal. Lab. Code § 3860(c). The amount of litigation expenses and attorney's fees is to be determined by the court. *Hughes v. Argonaut Ins. Co.*, 88 Cal.App.4th 517, 525 (2001); *see also* Cal. Lab. Code § 3860(f).[6] After the deduction of the employee's attorney's fees and costs from the settlement, the carrier may be reimbursed for payments made. Any amount remaining in the settlement fund may then be distributed as agreed. *See, e.g., Phelps v. Stostad*, 16 Cal.4th 23, 30 (1997) (outlining the CWCA's payment priority rule and emphasizing that this rule anticipated situations in which employee might recover nothing in order to satisfy her costs and attorney's fees and make the carrier whole.)

However, California courts do not apply the priority rule to all settlements blindly. Of crucial importance to the instant motion, different types of settlements between injured employees and third party tortfeasors have been identified, each with different consequences for the carrier's reimbursement. Generally, the settlement may be "segregated" or "nonsegregated," and it may

---

[5] If the case proceeds to judgment, section 3856 dictates the court's distribution of any judgment against a third party, which depends on which party or parties participated in litigating the action.

[6] The Court notes here that the FTCA does not provide for costs, and bars attorneys from collecting a fee in excess of 25 percent of any settlement of a claim brought thereunder. 28 U.S.C. § 2678. This provision "limits the amount an attorney can recover in a contingency fee arrangement." *Jackson v. U.S.*, 881 F.2d 707, 713 (9th Cir. 1989). The Ninth Circuit has determined that the limits placed on attorney's fees by the FTCA do not relate to the government's underlying liability where this determination will not affect the amount the government ultimately pays. *Id.* at 712.

arise out of situations in which the third party asserted an affirmative defense of contributory negligence by the employer, or did not assert such a defense. If the settlement between an employee and a third party is "nonsegregated," meaning that it covers the claims of both the employee and the carrier, the settlement may properly be subject to the carrier's lien in the amount of benefits paid, and the carrier can recover against the settlement and is not required to pursue a direct action against the third party. *Marrujo v. Hunt*, 71 Cal.App.3d 972, 977-78 (1977). If, on the other hand, the settlement is "segregated," meaning the employee succeeded in separating his claim against the third party from the carrier's subrogated right of reimbursement, as permitted by the 1971 Amendment, the employee may "settle his own claim for a sum exclusive of the amounts he had already received in the form of a workers' compensation award without jeopardizing the [carrier's] subrogation right." *Ellis v. Wells Manufacturing, Inc.*, 216 Cal.App.3d 312, 316 (1989) (internal quotations omitted). A brief summary of several California cases elaborating on the different categories of settlements is instructive here.

In *Van Nuis v. Los Angeles Soap Co.*, 36 Cal.App.3d 222, 229 (1973), the court interpreted the newly amended CWCA provisions and determined that:

> (1) an employee may settle his claim against a third party without the [carrier's] consent; (2) such a settlement is not, without more, subject to the [carrier's] lien for reimbursement for compensation benefits paid to the employee whenever a [defense of the employer's contributory negligence under *Witt v. Jackson*, 57 Cal.2d 57 (1961) is asserted]; (3) the [carrier] retains the right to recover such payments in case the employee settles, but he must do so by bringing an action against the third party pursuant to Labor Code section 3852.

Applying these principles, the *Van Nuis* court determined the carrier could not impose a lien upon an employee's settlement with a third party tortfeasor where the third party asserted a *Witt v. Jackson*[7] defense in its answer and the settlement specifically excluded benefits paid to the employee. *Id.* at 231. In contrast, a few years later in *Marrujo v. Hunt*, 71 Cal.App.3d at 979, the court enforced a carrier's lien on an employee's settlement of his claim against a third party tortfeasor where the court determined the settlement did not segregate the employee's claim from

---

[7] In *Witt v. Jackson*, 366 P.2d 641 (1961), the court found a contributorily negligent employer was barred from participating in recovery against a third party, establishing that a third party defendant may defend against an employee's action on the basis of employer negligence, which would bar the carrier's lien. *See also Assoc. Const. & Eng.*, 587 P.2d at 695 (updating *Witt v. Jackson* to reflect principles of comparative negligence and allow partial recovery.)

1   the carrier's right of subrogation.  The court distinguished *Van Nuis* because the settlement had not
2   excluded benefits paid, and the third party tortfeasor had not asserted a *Witt v. Jackson* defense, so
3   "there was no issue of concurrent negligence on the part of [the employer] which would bar [the
4   carrier's] right to recover" the benefits.  *Id.*

5       In yet a third iteration, the court invalidated a carrier's lien on an employee's settlement
6   where the settlement included benefits paid, and a *Witt v. Jackson* contributory negligence defense
7   was asserted in the third party's answer.  *Ellis v. Wells*, 216 Cal.App.3d at 317.  "The fact that the
8   settlement included benefits should not operate to bar . . . an opportunity to litigate the *Witt v.*
9   *Jackson* issue.  The reason is obvious: to permit a lien here would enable [the carrier] to recover
10  the full amount of benefits paid regardless of whether [the employer] was negligent. This would
11  obviate the policy, so clearly expressed in *Witt*, preventing . . . double recovery."  *Id.*  The court
12  further reasoned that although the settlement included benefits paid, the carrier's right to obtain
13  reimbursement was not jeopardized because the settlement provided that the employee would hold
14  the third party harmless against any claim by the carrier and required the employee to defend an
15  action by the carrier to recover benefits.  *Id.*

16      Turning to the facts in this case with these considerations in mind, the Court finds Twin
17  Cities' lien should not be imposed upon the parties' settlement.  First, Defendant's answer contains
18  affirmative defenses asserting a few different contributory negligence theories, each of which
19  implicates a potential *Witt v. Jackson* defense.  (Answer, ECF No. 4.)  For example, Defendant
20  alleges: "To the extent the acts or omissions of others were the sole proximate causes of any
21  injury, damage, or loss to the Plaintiff, those acts and omissions have superseded any acts or
22  omissions of Defendant."  (Answer ¶ 4.)  Defendant states further that damages should be
23  allocated between defendants "in direct proportion to that defendant's percentage of fault."
24  (Answer ¶ 7.)  Although Defendant's answer does not directly reference *Witt v. Jackson*, it
25  provides clear notice that Defendant intends to defend on the basis of another party's contributory
26  negligence.  However, the issue of the employer's contributory negligence has not yet been
27  determined, either by the Court or the parties' settlement, which was a crucial factor in *Van Nuis*.
28  Second, the stipulation of settlement between the parties only purports to release Plaintiff's claims

against Defendant. Although it does not explicitly exclude benefits already paid to Plaintiff by Twin Cities, it provides Plaintiff will "indemnify, defend and save harmless" Defendant from any cause of action, lien, right, or subrogated interest asserted by Twin Cities, just as the settlement did in *Ellis v. Wells*. Thus, the carrier's right to seek reimbursement is not extinguished.

For these reasons, the Court finds that Twin Cities' lien on any judgment or settlement in this action should be invalid under California law. As described above, this decision does not in any way preclude Twin Cities' full recovery of the payments it has made by directly bringing an action itself pursuant to section 3852 and elaborated in *Van Nuis*.[8] Having determined the lien does not protect Twin Cities' interest in this action, the Court turns next to the related and presently contested issue of whether or not Twin Cities' may now intervene in this action.

**2. Intervention as of Right**

As noted above, the appropriateness of a motion to intervene as of right depends on four considerations: the motion's timeliness, the proposed intervenor's interest in the matter, the extent to which intervention is necessary to protect this interest, and the inadequacy of the other parties' representation in protecting this interest. *See Kootenai Tribe of Idaho*, 313 F.3d at 1107–08 (9th Cir. 2002.) In considering the motion's timeliness, three criteria are relevant: 1) the current stage of the litigation; 2) the possible prejudice to other parties; and 3) the length and reason for any delay in moving to intervene. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990), *cert. denied*, 501 U.S. 1250 (1991). Timeliness is "the threshold requirement" for intervention as of right. *League of Latin American Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (citing *United States v. Oregon*, 913 F.2d at 588). Thus, if Twin Cities' motion was not timely filed, the Court need not look to any of the remaining considerations. *Id.* For the reasons explained below, all three factors weigh in favor of finding that Twin Cities' motion to intervene is untimely and should be denied as such.

---

[8] In fact, California courts have specifically condoned this procedural result, and have further found that in order to facilitate such actions, the Workers' Compensation Appeals Board may hear the carrier's petition for reimbursement in these situations, even if the employer's contributory negligence is asserted as a defense. *See Assoc. Construction & Eng'g*, 587 P.2d at 695 ("When an employer claims a credit before the board after an empoyee's independent third party settlement, section 3861 operates as a delegation of authority to the board to make the necessary determinations to apply this rule.")

*A. Current Stage of Litigation*

A significant amount of litigation has occurred in this case. The complaint was filed July 22, 2009, and proceeded, for years, through the summary judgment phase. On February 22, 2011, the Court granted Defendant's motion for summary judgment, and awaited a renewed motion. Thereafter, the parties settled the case. In fact, this case would have been dismissed with prejudice months ago pursuant to the parties' joint motion, filed July 14, 2011, if not for Twin Cities' attempted intervention.

In *League of Latin American Citizens*, 131 F.3d at 1303, the Ninth Circuit found the district court had properly denied a motion to intervene where it had already issued a preliminary injunction, certified a class, discovery had proceeded nine months before being suspended, and a summary judgment motion had been heard. The court reasoned: "The simple fact that a trial had not yet commenced when [the motion to intervene was filed] . . . cannot be dispositive. To confer talismanic significance upon the beginning of trial would be to elevate form over substance. We believe, in contrast, that the timeliness inquiry demands a more nuanced, pragmatic approach." The court went on to state that an emphasis on the pre-trial nature of the proceedings was misplaced when "a lot of water had already passed underneath [the] litigation bridge." *Id.*

Here, where a lot of water has passed under the bridge and the case has proceeded to settlement, this factor weighs heavily against finding Twin Cities' motion is timely.

*B. Possible Prejudice to Other Parties*

Twin Cities states it seeks to intervene in order to recover the amount of worker's compensation it already paid to Plaintiff and that this intervention is necessary to "prevent double recovery by the plaintiff." (Reply 3.) However, Twin Cities does not explain why this is the case, nor does it address any of the California case law regarding an employee's segregated settlement of his claims, as discussed above. Because Twin Cities may still recover its payments in a separate action, the Court cannot agree with Twin Cities that intervention is necessary.

Further, as a general rule intervenors are allowed to litigate fully once admitted fully to a suit, and the "inevitable effect of prolonging the litigation to some degree" caused by intervention has been found a prejudice. *See, e.g.*, *League of Latin American Citizens*, 131 F.3d at 1304.

Although this generic potential for delay is not alone decisive, in a situation where the case is "beginning to wind itself down" or, as here, would be complete but for the disruption caused by the proposed intervenor, this additional delay caused by the intervenor's presence counsels against granting the motion. *Id.* If admitted as a party, Twin Cities would be allowed to litigate fully, and its late intervention could potentially upset the settlement the parties have reached. *See, e.g., R & G Morg. Corp. v. Federal Home Loan Mortg.* Corp., 584 F.3d 1 (1st Cir. 2009) (denying motion to intervene as untimely where parties had forged a settlement prior to motion and intervenor had an adequate remedy because it could bring a separate action to recover the damages from one of the parties); *United States v. Blue Chip Stamp* Co., 272 F. Supp. 432, 436 (D.C. Cal. 1967) (finding petitions to intervene untimely where parties settled and a consent decree had been entered, stating that where the litigation is concluded, "the application is clearly too late.")

As the court explained in *Blue Chip Stamp Co.*, 272 F. Supp. at 436, Rule 24's timeliness requirement is not without foundation. "The interest in expeditious administration of justice does not permit litigation interminably protracted through continuous reopening." *Id.* Twin Cities was aware of the existence of the parties' negotiations leading toward their eventual settlement, and if it was convinced that its interests would not be adequately protected without its entry into this suit as a party, it could and should have moved to intervene months earlier.

## C. Length of and Reason for Twin Cities' Delay

The Ninth Circuit has indicated that "any substantial lapse of time weighs heavily against intervention." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). As a reason for delay, Twin Cities offers the fact that it tried to get involved with the parties' settlement efforts in an effort to avoid the expense and effort of filing a motion to intervene, but that these attempts were unsuccessful. (Reply 2.) Twin Cities allegedly asked defense counsel to "include Twin Cities on the check" to Plaintiff, but was refused. (*Id.* at 3.) According to Twin Cities, Defendant cannot "have it both ways. It asserts that we have a right to a lien and yet when requested by this moving party to include our name on the check, they declined to do so after being advised that their failure to do so would result in the precise situation present before us." (*Id.*) However, this desire to avoid appearing formally before the court does not excuse its delay. *United States v.*

1  *Alisal Water Corp.*, 370 F.3d 915, 924 (9th Cir. 2004) ("An applicant's desire to save costs by
2  waiting to intervene until a late stage in litigation is not a valid justification for delay.")

3  Twin Cities further argues it was never served formal notice pursuant to section 3853 in an
4  apparent attempt to assert the parties' settlement should be invalidated if intervention is not
5  allowed. (Reply 3.) However, even though this alleged lack of notice under section 3853 may
6  impact the parties' rights under California law, Twin Cities had notice of the suit for the purposes
7  of Rule 24's timeliness inquiry. By its own admission, it was aware of the action at the very latest
8  by April 28, 2011, the date that counsel for Twin Cities "received the assignment of this file."
9  (Gubersky Decl. ISO Mot. to Stay ¶ 5, ECF No. 40). Even so, it did not file its notice of lien until
10 May 26, 2011, and it further waited to move for intervention until June 17, 2011.

11 The crucial date in assessing the timeliness of an intervention motion is the date that the
12 applicant "should have been aware [its] interests would no longer be protected adequately by the
13 parties." *Officers for Justice v. Civil Serv. Comm'n*, 934 F.2d 1092, 1095 (9th Cir. 1991)
14 (quotations and citations omitted). Here, the Court cannot determine that crucial date because
15 Twin Cities has failed to explain why its interest is inadequately represented by Plaintiff. *See*
16 *League of Latin American Citizens*, 131 F.3d at 130 (finding potential intervenor's motion
17 properly denied where it could not argue its motion was timely in the absence of a convincing
18 argument as to why the plaintiff's representation was inadequate to protect its interest.) Nor has
19 Twin Cities satisfactorily explained why it must intervene in order to protect its ability to recover
20 these payments, as previously discussed.

21 Twin Cities' notice argument additionally fails in its attempt to invalidate the parties'
22 settlement. Under the provisions of the CWCA, amended in 1971 and subsequentely interpreted
23 by California courts, an employee may settle his own claims without his employer's consent,
24 notwithstanding failure to provide proper notice. *See* part 1 *supra*, discussing Cal. Lab.
25 Code § 3859. Importantly, any such settlement cannot eliminate the carrier's claim for
26 reimbursement, which Twin Cities still retains here. To allow Twin Cities to intervene now
27 against Defendant, potentially upsetting this settlement and opening Defendant up to further
28 defend against this suit would prejudice Defendant. To simply deduct the compensation payments

1  made from the parties' settlement of Plaintiff's claims without allowing either party to defend on
2  the basis of the employer's contributory negligence would similarly be unjust. And in light of
3  these concerns, denying Twin Cities' entry into this case now is not unduly prejudicial to Twin
4  Cities. Pursuant to the parties' settlement agreement, Plaintiff must defend and indemnify
5  Defendant in any future action, and Plaintiff will have to reimburse Twin Cities' payments in such
6  action as long as its recovery is not barred under *Witt v. Jackson* by the employer's own
7  negligence. *See Ellis v. Wells*, 216 Cal.App.3d at 317.
8  For these reasons, the Court finds Twin Cities' motion to intervene is untimely and thus
9  improper under Rule 24(a). Because timeliness is a threshold requirement for intervention as of
10 right, the Court will not discuss the remaining three factors here.

**3. Permissive Intervention**

The Court further declines to allow Twin Cities to intervene in this matter pursuant to Rule 24(b)(1)(B) for largely the same reasons stated above. Perhaps most importantly, the Court finds permissive intervention is unnecessary because Twin Cities retains its interest in recovering the payments it has made. It may assert this interest in a separate action, which best serves the interests of justice in this context.[9]

**CONCLUSION**

For the foregoing reasons, Twin Cities' motion to intervene is **DENIED**. Further, its motion to stay is **DENIED** as moot. Lastly, the Court **GRANTS** the parties' joint motion to dismiss with prejudice pursuant to the stipulation of settlement between the parties. This concludes the litigation in this matter. The Clerk shall close the file.

**IT IS SO ORDERED**.

DATED: January 17, 2012

Honorable Janis L. Sammartino
United States District Judge

---

[9] In further support of this outcome as a matter of policy, in *Roe v. Workmen's Comp. App. Bd.*, 528 P.2d 771, 775 (1974), the court stated that the policy against an employer benefitting from its own negligence outweighs the policy against an employee's double recovery, finding that the latter "primarily protects the third-party tortfeasor, not the employer."